**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN PIKE, et al.,** | ) | **CASE NO.  1:14 CV 2529** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **BANK OF AMERICA, N.A., et al.,** | ) | |
| | ) | |
| Defendants. | ) | <u>**MEMORANDUM OPINION**</u> |

This matter is before the Court on the Motions to Dismiss filed by Defendants, Bank of America, N.A. ("BANA"), Countrywide Home Loans, Inc. ("Countrywide") and, Wells Fargo Bank, N.A. ("Wells Fargo") (Docket #16); Defendant, Real Time Resolutions, Inc. ("RTR") (Docket #18); and, Defendant, Bank of New York Mellon f/k/a The Bank of New York, as Successor to JPMorgan Chase Bank, N.S., as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-G ("BNY Mellon") (Docket #29).  Defendants, through their respective briefs, ask the Court to dismiss the claims of Plaintiffs, John and Teresa M. Pike ("the Pikes"), pursuant to Fed. R. Civ. P. 12(B)(6), for failure to state a claim upon which relief may be granted.

**Factual and Procedural Background**

On June 19, 2006, the Pikes executed a Note in favor of Countrywide, in the amount of $652,000.00.  (Complaint at Paragraphs 31 and 35.)  The Note was secured by a Mortgage

recorded on June 26, 2006, with Mortgage Elect Registration Systems ("MERS") as the nominee for successors and assigns. (Id. at 36.) Monthly payments were calculated at $4,121.08. Documentation provided to the Court indicates that interest in the Note and Mortgage was transferred from Countrywide to BAC Home Loans Servicing ("BACHLS"), then from BANA, as successor by merger to BACHLS, to Wells Fargo. The entities responsible for servicing the loan changed over time as well. The Pikes claim that at all relevant times BANA was the servicer of the loan. The Pikes allege that both BANA and Wells Fargo acquired their "alleged interest after any alleged default." (Id. at 45.)

At the time they executed the Note and Mortgage, the Pikes also executed a home equity line of credit ("HELOC") in the amount of $150,000.00 in favor of Countrywide, recorded on June 26, 2006. (Complaint at Paragraph 57.) Servicing rights to the HELOC transferred to RTR on June 21, 2011.

On May 2, 2013, Wells Fargo filed a Complaint in Foreclosure against the Pikes, alleging that the Pikes defaulted on their Note and Mortgage as of September 1, 2010. (Id. at 37 and 40.) In the Fair Debt Collection Practices Act Notice attached to the Complaint, the amount owed was stated to be at least $788,786.52. The Pikes retained a law firm, Doucet & Associates, to represent them and, on May 30, 2013, answered the Foreclosure Complaint. The Foreclosure Complaint was dismissed on June 20, 2013, at the request of Wells Fargo. The Parties have not fully explained why the Foreclosure Complaint was voluntarily dismissed.

The documentation attached by the Parties suggests that the Pikes have not made monthly payments on their mortgage and home equity line of credit since the fall of 2010. In the fall of 2013, after Wells Fargo requested dismissal of the Foreclosure Complaint, the Pikes sent written requests for information to certain named Defendants, which the Pikes purport to be qualified

written requests ("QWRs"), challenging late fees that had been applied to their account and requesting additional information. On November 18, 2014, the Pikes filed this lawsuit, alleging that Defendants in this case violated various Federal consumer protection statutes by failing to correct charges to their account which the Pikes believed to be in error; failing to adequately respond to qualified written requests for information regarding fees they believe were erroneously added to their total balance; by continuing to direct communications to the Pikes rather than Counsel as requested; and, by continuing to report their delinquencies to consumer reporting agencies.

The Pikes raise claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605(e)(2), against Defendants BANA, Wells Fargo, RTR, Countrywide and Bank of New York (First Count); under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2), against Defendants Wells Fargo and Bank of New York (Second Count); and, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., against Defendants BANA and Wells Fargo (Third Count).

On January 20, 2015, Defendants BANA, Countrywide and Wells Fargo filed their Motion to Dismiss. (Docket #16.) The Pikes filed their Memorandum in Opposition on February 23, 2015. (Docket #30.) A Reply Brief was filed on March 11, 2015. (Docket #35.)

On January 26, 2015, Defendant RTR filed its Motion to Dismiss. (Docket #18.) The Pikes filed their Memorandum in Opposition on March 2, 2015. (Docket #32.) A Reply Brief was filed on March 9, 2015. (Docket #33.)

On January 29, 2015, Defendant Bank of New York filed its Motion to Dismiss. (Docket #29.) The Pikes filed their Memorandum in Opposition on March 19, 2015. (Docket #37.) A Reply Brief was filed on March 25, 2015. (Docket #38.)

**DISCUSSION**

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the

-4-

instant Motion must be decided.

**I.     RESPA.**

Congress enacted RESPA, 12 U.S.C. § 2605, "in part to provide more effective advance disclosure to home buyers and sellers of settlement costs, and in response to abusive practices in the real estate settlement process." *Mellentine v. Ameriquest Mortg. Co.*, 515 Fed. Appx. 419, 424 (6th Cir. Mich. 2013) (internal quotation marks omitted).  12 U.S.C. § 2605(e), entitled of "Duty of loan servicer to respond to borrower inquiries," imposes certain duties on entities servicing federally related mortgages.  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Pursuant to 12 U.S.C. § 2605(e), a consumer may send a qualified written request ("QWR") to a loan servicer, requesting certain types of information related to the servicing of their loan.  12 U.S.C. § 2605(e)(1)(A); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. Cal. 2012) (noting that § 2605(e)'s requirement that a QWR "must request information relating to servicing . . . ensures that the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers").  A QWR is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that - (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  Upon receipt of a QWR, the

loan servicer must provide a written response acknowledging receipt of the QWR within five days and must provide an answer sufficient to satisfy the requirements of 12 U.S.C. § 2605(e) within thirty days. 12 U.S.C. § 2605(e)(1)(A) and (e)(2). The 30-day period may be extended for 15 days provided the servicer notifies the borrower of the extension and reason for the delay. 12 U.S.C. § 2605(e)(4). 12 U.S.C. § 2605(k)(1)(D) provides that a servicer shall not "fail to respond within 10 days to a request from a borrower to provide the identity, address and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(e)(3) prohibits a servicer who has received a QWR from providing information to any consumer reporting agencies regarding any overdue payment during the 60-day period following receipt of a QWR.

### A. BANA and Wells Fargo

On September 19, 2013, June 24, 2014 and September 11, 2014, the Pikes sent Defendant BANA letters that included their name and account number, which they allege constitute QWRs under RESPA. The Pikes disputed all late fees, charges, inspection fees, property appraisal fees, legal fees and corporate advances relative to their loan and asked BANA to correct their account. The Pikes allege that BANA, and Wells Fargo as principal of BANA, violated RESPA by failing to correct their account and/or properly respond to the alleged QWRs within the required time period; by providing information to consumer reporting agencies despite the fact that the qualified written requests had been made; and, by continuing to contact the Pikes directly in spite of the fact that they were represented by Counsel.

The Pikes assert that pursuant to RESPA, BANA was under an obligation to either correct their account or, after conducting an investigation, explain or clarify why it believes the account is already correct or explain or clarify why the requested information could not be

obtained or provided, but failed to do so. 12 U.S.C. § 2605(e)(2)(A)-(C). BANA and Wells Fargo argue that the response was sufficient and that a response to certain requests were not within the scope of RESPA.

The allegations in the Complaint, when viewed in a light most favorable to the Pikes, are sufficient to state a claim against BANA, as the alleged servicer of the mortgage loan, under RESPA. Discovery will clarify whether BANA's responses to the written requests made by the Pikes were sufficient and whether or not BANA complied with the additional requirements of RESPA. Accordingly, Defendants' Motion to Dismiss the Pikes' RESPA claim against BANA is denied.

Wells Fargo was not included in the correspondence between the Pikes and BANA and there is nothing alleged in the Complaint to support a claim that Wells Fargo is vicariously liable for any alleged RESPA violations by BANA. Accordingly, the Pikes' RESPA claim against Wells Fargo is dismissed.

### B. Bank of New York, Countrywide and RTR

On September 19, 2013, the Pikes mailed RTR two letters that included their name and HELOC account number, which they allege constitute QWRs under RESPA. The first of the two letters contains an FDCPA demand and a TILA demand, and asks that all future correspondence be directed to Counsel; states that the Pikes dispute the validity of their debt; and, asks for the name and address of the original creditor, the owner of their note and the master servicer. (Complaint at Exhibit D.) The second letter requests a current reinstatement quote and payoff amount. (Id.)

On September 25, 2013, RTR sent Counsel for the Pikes a letter acknowledging receipt of the September 19, 2013 correspondence. RTR included prior letters sent to the Pikes

-7-

regarding their loan balance and current payoff; the name of the creditor of the loan (Bank of New York) and, indicated the Pikes should contact RTR if they wished to cure the deficiency on their loan. The letter also identifies RTR as the servicer of the loan.

The Pikes allege that RTR, and Countrywide and Bank of New York as principals of RTR, violated RESPA, 12 U.S.C. § 2605(e), by failing to provide Plaintiffs a written explanation of why all the information they requested pertaining to the account, including a reinstatement quote, current pay-off, and the name, address, and telephone number of the owner of their obligation, was unavailable or could not be obtained; providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiffs that were related to their September 19, 2013 QWR; and, not providing Plaintiffs with all the information requested in Plaintiffs' September 19, 2013 QWR. The Pikes assert that RTR was under an obligation to undertake an investigation regarding the substance of their requests and give the Pikes reasons why RTR believed the account to be correct based on the fact that in the first of the two letters, the Pikes notified RTR that they disputed charges on their account.

RTR argues that because the Pikes' loan was in default, it was not "servicing" their account and, therefore, that Pikes' letters do not constitute QWRs and the requirements of RESPA do not apply. Further, RTR argues that no specific reference to RESPA was made by the Pikes in their correspondence; that a request for a payoff balance is not a QWR under RESPA; and, that RTR did in fact investigate and respond to the Pikes' letter. Bank of New York adopts the arguments made by RTR in its Motion to Dismiss regarding the Pikes' RESPA claim, arguing that RESPA does not apply to loans in default; that a sufficient response was provided by RTR; and, that the remaining requests did not fall under RESPA and accordingly did not warrant a response. Countrywide argues that RESPA pertains to servicing activities and

-8-

that Countrywide was not the servicer or engaged in servicing activities, nor were they included in the correspondence sent by the Pikes.

The allegations in the Complaint, when viewed in a light most favorable to the Pikes, are sufficient to state a claim against RTR under RESPA. There is no requirement that the written request for information include a specific reference to the RESPA statute; RTR indicated it was currently servicing the loan in its written response to the Pikes' letters; and, the Pikes have sufficiently alleged that RTR failed to satisfy the requirements of 12 U.S.C. § 2605 under the Rule 12(b)(6) standard. While a handful of courts have found the requirements of RESPA to be inapplicable to loans in default, the issue is more properly resolved on summary judgment with the benefit of discovery to clarify the role played by RTR at the time the Pikes' letters were sent and a more thorough analysis of statutory and case law as it applies to the facts and circumstances in this case. Accordingly, RTR's Motion to Dismiss (Docket #18) is denied.

Neither Bank of New York nor Countrywide were included in the correspondence between the Pikes and RTR and there is nothing alleged in the Complaint to support a claim that Bank of New York or Countrywide are vicariously liable for any alleged RESPA violations by RTR. Accordingly, the Pikes' RESPA claims against Bank of New York and Countrywide are dismissed.

**II.    TILA.**

The Pikes raise their TILA claim against Bank of New York and Wells Fargo. The Pikes allege that Wells Fargo, the owner of their mortgage, through the actions or inaction of BANA, the servicer, failed to provide the name, address and telephone numbers of the owner of the mortgage after written requests were made on September 19, 2013, June 24, 2014, and September 11, 2014, in violation of 15 U.S.C. § 1641(f)(2). The Pikes allege the same with

-9-

regard to their home equity line of credit, asserting that Bank of New York, the owner of their HELOC, through the actions or inaction of RTR, the servicer, failed to provide the same requested information after a written request was made on September 19, 2013, in violation of 15 U.S.C. § 1641(f)(2).

The declared purpose of TILA, 15 U.S.C. § 1601, et seq., is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). TILA requires creditors/owners to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights" and provides for an action for damages against any creditor who fails to comply with its requirements. *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). The Sixth Circuit has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 714 (6th Cir. Ohio 2013); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. Ohio 1998).

15 U.S.C. § 1641(f)(2) provides that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." TILA does not impose liability upon a servicer who is not an owner of the loan. *Marais*, 736 F.3d at 718-19. However, a mortgage owner may be held vicariously liable for a servicer's failure to comply with 15 U.S.C. § 1641(f). *See Marais*, 736 F.3d at 716-17; *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309, 1315 (S.D. Fla. Aug 30, 2012).

Although TILA does not provide a time period within which a request under § 1641(f)(2) must be answered, the servicer must respond within a reasonable period of time.  *Ording v. BAC Home Loans Servicing, LP*, Civ. No. 10-10670, 2011 U.S. Dist. LEXIS 83269, at *9 (D. Mass. Jan. 10, 2011); 12 C.F.R. § 226.36(c)(1)(iii)).  "[A] violation of § 1641(f)(2) occurs, as some courts have sensibly concluded, either (i) after a 'reasonable time' has passed since the obligor sent a request without the servicer having sent any response, or (ii) when the servicer sends an inadequate response to that request." *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 352 (E.D. Va. 2011). "In other words, the limitations period applicable to a § 1641(f)(2) claim begins to run at the earlier of the expiration of a reasonable time or the sending of an inadequate response." *Id.*  Damage claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e).

### A. Bank of New York

The Pikes' TILA claim against Bank of New York, by which they seek to hold Bank of New York liable for an alleged TILA violation by RTR, was filed beyond the one-year statute of limitations period.  The Pikes sent their request for information to RTR on September 19, 2013; the letter was received by RTR on September 23, 2013; and, RTR responded on September 25, 2013.  Accordingly, the statute of limitations for the Pikes' TILA claim against Bank of New York began to run on September 25, 2013, as that is when the alleged inadequate response was sent by RTR to the Pikes.  The Complaint in this case was filed on November 18, 2014 and, therefore, the Pikes' TILA claim against the Bank of New York is time-barred.

### B. Wells Fargo

At this stage of the proceedings, there is no evidence that BANA responded to the Pikes' letters dated September 13, 2013 or June 24, 2014, aside from notifying the Pikes that it would

need additional time to compile the requested information. BANA had a "reasonable time" to respond to the Pikes' requests for information and the statute of limitations began to run after a reasonable time had passed in which the requested information was not provided. Viewing the allegations in light most favorable to the Pikes, the Complaint was filed within one year after a reasonable response time had expired and, therefore, the Pikes' TILA claim against Wells Fargo is timely for purposes of the Motion to Dismiss. The Parties may revisit the statute of limitations issue, if necessary, once discovery is complete, should they so choose.

Whether BANA provided a complete response to the Pikes' September 11, 2014 request for information remains unclear. The issue is more properly resolved on summary judgment with the benefit of discovery to clarify exactly what correspondence was sent by Wells Fargo to the Pikes, along with a more thorough explanation as to whether the response did, in fact, satisfy the requirements of TILA.

The factual allegations raised in the Complaint are sufficient to state a claim against Wells Fargo under TILA, 15 U.S.C. § 1641(f)(2), and Defendants' Motion to Dismiss is denied as to said claim.

**III.  FDCPA –  BANA and Wells Fargo.**

The Pikes raise their FDCPA claim against BANA and Wells Fargo. BANA and Wells Fargo argue that, to the extent the claims occurred more than a year prior to filing this action, said claims are time-barred and also, that even if not time-barred, the Pikes' FDCPA claim fails because neither BANA or Wells Fargo are debt collectors under the Act.

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action

to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Congress designed the [FDCPA] to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. Or. 1988) (quoting S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). See also *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. Tenn. 2007) (FDCPA does not apply to a "party to whom the debt is due"). Creditors and mortgage servicers are excluded from the definition of "debt collector," provided the creditor or servicer neither acquired the debt when it was in default nor treated the debt as if it were in default at the time of acquisition. *Bridge v. Ocwen Fed. Bank.*, 681 F.3d 355, 362 (6th Cir. Ohio 2012) (holding that "definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition."). In *Brown v. Morris*, 243 F. App'x 31, 34 (5th Cir. Miss. 2007), the Court drew a distinction between mortgages assigned for debt-collection purposes, as opposed to those mortgages acquired through merger, for purposes of determining whether an entity is in fact a debt collector as defined by the FDCPA.

The facts as alleged in the Complaint are sufficient to state a claim against Defendant BANA under the FDCPA. Assuming the facts as alleged by the Pikes' to be true, the Complaint was filed within one year after a reasonable response time had expired. The Parties may revisit

the statute of limitations issue, if necessary, with the benefit of discovery, should they so choose. While BANA argues that it was a loan servicer and not a debt collector and, therefore, that the FDCPA does not apply, see *Adams v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 52398 (E.D. Mich. 2013), the issue is more properly resolved on summary judgment with the benefit of discovery to clarify the roll of BANA at the time the Pikes' letters were sent. Accordingly, Defendants' Motion to Dismiss the Pikes' FDCPA claim against BANA is denied.

In their Complaint, the Pikes allege "Wells Fargo, as principal for Defendant BANA, is liable for its agent's, Defendant BANA's, violations of the FDCPA." However, no facts have been pled to support the Pikes' assertion that Wells Fargo and BANA worked together in a principal-agent relationship to collect the debt. See *Justice v. Ocwen Servicing*, LLC, 2:13 CV 165 (S.D. Ohio 2014). Accordingly, the Pikes have failed to allege a viable FDCPA claim against Wells Fargo.

## CONCLUSION

The Motion to Dismiss filed by Defendants BANA, Countrywide and Wells Fargo on January 20, 2015 (Docket #16) is hereby GRANTED IN PART AND DENIED IN PART. The Motion to Dismiss is granted as to the Pikes' RESPA claim against Defendants Countrywide and Wells Fargo and the Pikes' FDCPA claim against Defendants Wells Fargo. The Motion to Dismiss is denied as to the Pikes' RESPA and FDCPA claims against BANA and denied as to the Pikes' TILA claim against Wells Fargo.

The Motion to Dismiss filed by Defendant RTR on January 26, 2015 (Docket #18) is hereby DENIED in its entirety.

The Motion to Dismiss filed by Defendant Bank of New York on January 29, 2015 (Docket #29) is hereby GRANTED in its entirety.

This case is hereby dismissed as to Defendants Countrywide and Bank of New York.

A status conference will be held on Friday, July 10, 2015 at 9:00 a.m.

IT IS SO ORDERED.

                                              s/Donald C. Nugent
                                              DONALD C. NUGENT
                                              United States District Judge

DATED: June 19, 2015