IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN PIKE, et al.,** | ) | **CASE NO. 1:14 CV 2529** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **BANK OF AMERICA, N.A., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | <u>**MEMORANDUM OPINION**</u> |

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, Wells Fargo Bank, N.A and Bank of America, N.A. (Docket #82); the Motion for Summary Judgment filed by Defendant, Real Time Resolutions, Inc. (Docket #84); and, the Motion for Summary Judgment filed by Plaintiffs, John Pike, aka John F. Pike, Jr. and Teresa M. Pike (Docket #88).

**I.      Factual and Procedural Background.**[1]

On June 19, 2006, the Pikes obtained a loan in the amount of $652,000.00 from Countrywide Home Loans, Inc. ("the Loan") as part of the refinancing of their home in Toledo, Ohio. (Complaint at Paragraphs 31 and 35.) The Note was secured by a Mortgage in favor of

---

[1]     The facts stated herein are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

Countrywide. (Id. at 36.) Monthly payments were calculated at $4,121.08. On June 21, 2011, the Loan was assigned to BAC Home Loans Servicing ("BACHLS") and, on April 1, 2013, Bank of America, N.A. ("BANA"), as successor by merger to BACHLS, assigned the Loan to Wells Fargo. At all times relevant to the Complaint, Wells Fargo owned the Loan and BANA serviced the Loan.

On or about July 26, 2006, the Pikes also executed a home equity line of credit ("HELOC") in the amount of $150,000.00 in favor of Countrywide. (Complaint at Paragraph 57.) The HELOC was secured by an open-end mortgage in favor of Countrywide.

### A. Default.

The Pikes defaulted on the Loan and HELOC in October 2010. The Pikes admittedly have not made any payments toward the Loan and HELOC since October 2010 and have continued to reside in the house. Mr. Pike stated during deposition that around the time he stopped making the payments required under the Loan and HELOC, he contacted Bank of America regarding the possibility of a loan modification but, after speaking to four different people, was told he did not qualify for a modification. (Pike Depo. at p. 118-120.) Mr. Pike had no further communication with Bank of America regarding a loan modification. Mr. Pike never requested a loan modification or other relief with regard to the HELOC.

RTR commenced collection duties on the HELOC in June 2011. (Docket #85, Exhibit A.) RTR never received any payments from the Pikes and no payments were applied toward the account by RTR. (Id.)

On May 2, 2013, Wells Fargo filed a Complaint in Foreclosure against the Pikes in the Lucas County Court of Common Pleas, alleging that the Pikes defaulted on their Note and Mortgage as of September 1, 2010. (Id. at 37 and 40.) In the Fair Debt Collection Practices Act

Notice attached to the Complaint, the amount owed was stated to be at least $788,786.52. The Pikes retained a law firm, Doucet & Associates, to represent them and, on May 30, 2013, answered the Foreclosure Complaint. The Foreclosure Complaint was dismissed on June 20, 2013, at the request of Wells Fargo. The Parties have not fully explained why the Foreclosure Complaint was voluntarily dismissed. Since that time, the Pikes have not tried to refinance their debt, nor have they attempted to sell the home. (Pike Depo. at p. 78

### B.     Qualified Written Requests for Information.

In the fall of 2013, after Wells Fargo requested dismissal of the Foreclosure Complaint, the Pikes, through their attorneys Doucet & Associates, sent written requests for information to certain named Defendants, which the Pikes purport to be Qualified Written Requests ("QWRs"), as contemplated by various consumer protection statutes. In the QWRs, the Pikes stated that several of the charges to their Loan were erroneous and requested additional information regarding their Loan and HELOC.

#### 1.     BANA.

On September 19, 2013, Doucet & Associates sent letters to BANA which they assert constitute QWRs as defined by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.§ 2605(e)(1)(B), requesting certain information regarding the Pikes' Loan. (Docket #88-7, Exhibit G.) The QWRs also indicated that the Pikes believed their Loan balance was erroneous; listed certain late charges and/or fees that they asserted were unauthorized or excessive; and, requested the Pikes' account be corrected by removing the unauthorized charges.[2]

---

[2]      Mr. Pike testified during deposition that at the time the QWRs were sent, there was no possibility that he would have been able to reinstate and begin making payments

The September 19, 2013 QWRs were not sent to the correct address. Nevertheless, on September 25, 2013, BANA sent a letter to the Pikes at their home address, acknowledging receipt of the QWRs. (Docket #88-8, Exhibit H.) On October 2, 2013, BANA sent the Pikes a letter, which explained that in order to ensure confidentiality, responses to the QWRs could not be provided to Doucet & Associates because the signature on the authorization letter received by BANA did not match the signature on file with BANA. (Docket #88-1.) The Pikes were instructed to send BANA a photocopy of a State-issued identification card showing Mr. Pike's current signature, or send a signed and dated authorization granting BANA permission to release the information. (Id.) The correspondence provided a fax number and address, as well as an 800 number for questions. (Id.) BANA also advised Doucet & Associates that it declined the request for information based on non-matching signatures and informed Counsel that the Pikes could call BANA and provide a verbal authorization which would allow same-day disclosure of the requested information. (Id.) Neither Plaintiffs nor their Counsel took any action to resolve the issue regarding non-matching signatures or to provide authorization at that time. (Pike Depo. at pp. 128-33.)

On June 24, 2014, over 9 months later, Doucet & Associates sent a second set of QWRs to BANA, virtually identical to the September 19, 2013 QWRs, to a different incorrect address. (Docket #88-9.) On July 1, 2014, BANA responded, advising the Pikes and Doucet & Associates that there was still an issue with non-matching signatures that needed to be resolved. (Docket #82-1.) BANA again explained what the Pikes needed to do to authorize Doucet & Associates to communicate with BANA on their behalf. (Id.) Neither the Pikes nor their attorneys took any action.

---

 or pay off the Loan or HELOC. (Pike Depo. at pp. 75-76, 134-35 and 141.)

-4-

On September 11, 2014, Doucet & Associates sent BANA a third set of QWRs, to the incorrect address used in the first set of QWRs, requesting the same information.  This time the correspondence included the photocopy of a State-issued identification card showing Mr. Pike's signature.  (Docket #88-1.)  BANA provided a timely response to the third set of QWRs.  (Docket #82-1.)  The Parties disagree as to whether BANA's response was adequate.

### 2..    RTR.

On September 19, 2013, Doucet & Associate sent two letters to RTR which they assert were QWRs as contemplated under RESPA, 12 U.S.C. § 2605(e)(1)(B). (Docket #88-5.)  One of the letters included Paragraphs entitled "FDCPA Demand" and "TILA Demand" and requested, in pertinent part, as follows:

### FDCPA DEMAND

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, et seq., specifically 15 U.S.C. § 1692c(a)(2), you are hereby directed to cease all communication with our client(s) and direct all correspondence and communications to: Doucet & Associates, LLC, at 4200 Regent Street, Suite 200, Columbus, Ohio 43219.

Furthermore, pursuant to 15 U.S.C. § 1692g, our client disputes the validity of the debt and requests that you provide verification of the same to my address above.  Our client also requests the name and address of the original creditor.

### TILA DEMAND

In accordance with the Truth in Lending Act, 15 U.S.C. § 1641(f)(2), our client hereby requests the name, address, and telephone number of the owner of their note, plus the name of the master servicer of their note.

The Pikes only claim against RTR is brought pursuant to RESPA, not the FDCPA or TILA.

The second letter from the Pikes to RTR did not refer to any particular statute and reads, in pertinent part, "In accordance with the Note and Mortgage, please provide a current reinstatement quote for the above-reference account(s).  (Docket #88-5.)  Also, please provide a

-5-

current payoff as soon as possible and mail to the address listed above.  A copy of my client's authorization is enclosed."  (Id.)

On September 25, 2013, RTR sent Doucet & Associates a letter in response to their QWRs, indicating that it had completed its research and that it was "servicing" the Pikes' account on behalf of Countrywide Home Loans ("BofA") pursuant to a transfer effective 6/22/2011.  (Docket #88-6.)  The letter also stated as follows:

> Real Time does offer a variety of ways to assist your client during the delinquency of the above referenced account including payment options and settlements.  As requested, we will direct all communication regarding this account through your office until otherwise instructed.

RTR included a copy of a June 14, 2011 Notice from BANA to Mr. Pike, indicating that he had been in default on the HELOC since October 2010 ("Next Payment Due: 11/25/2010") and listing the outstanding balance; a copy of the "Mortgage Collection, Processing and Reporting Transfer Notification" sent to Mr. Pike on June 23, 2011, indicating a balance of $147,218.23 and a payoff amount of $153,644.69 and disclosing that RTR was acting as a "debt collector;" a copy of the Pikes' signed Home Equity Credit Line Agreement and Disclosure Statement and Open-End Mortgage; and, a copy of the "Special Servicing Agreement" between Countrywide and RTR.

### C. The Pikes' Complaint in this Court

On November 18, 2014, the Pikes, through their attorneys Doucet & Associates, filed this lawsuit, alleging that Defendants in this case violated various Federal consumer protection statutes by failing to adequately respond to Qualified Written Requests for information; by failing to adequately explain and correct charges the Pikes allege were erroneously added to their total delinquent balance; by continuing to direct communications to the Pikes rather than

Counsel as requested; and, by continuing to report their delinquencies to consumer reporting agencies.  The Pikes raised claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605(e)(2), against Defendants BANA, Wells Fargo, RTR, Countrywide and Bank of New York (First Count); under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2), against Defendants Wells Fargo and Bank of New York (Second Count); and, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., against Defendants BANA and Wells Fargo (Third Count).

In January 2015, Defendants filed Motions to Dismiss the Pike's Complaint.  (Docket #s 16, 18 and 29.)  On June 19, 2015, the Court granted in part and denied in part the Motions to Dismiss filed by Defendants, leaving only the Pikes' RESPA and FDCPA claims against BANA; TILA claim against Wells Fargo; and, RESPA claim against RTR.

On November 23, 2015, Wells Fargo and BANA filed their Motion for Summary Judgment (Docket #82);  RTR filed its Motion for Summary Judgment (Docket #84); and, the Pikes filed their Motion for Summary Judgment (Docket #88).  All three summary judgment motions are fully briefed and ready for disposition.[3]

**II.     Standard of Review.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine dispute"

---

[3]  Also pending are the Motion to Strike Portions of the Affidavit of John Pike filed (Docket #93) and the Motion to Strike the Affidavit of Bridget Wasson (Docket #96), both filed by Defendant, Real Time Resolutions.  Both Motions are hereby denied as moot, as both Affidavits have only been considered to the extent admissible and neither impacts disposition of the pending Motions for Summary Judgment.

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

**III.    Discussion.**

    **A.    BANA - RESPA and FDCPA.**

-8-

### 1. RESPA.

Congress enacted RESPA, 12 U.S.C. § 2605, "in part to provide more effective advance disclosure to home buyers and sellers of settlement costs, and in response to abusive practices in the real estate settlement process." *Mellentine v. Ameriquest Mortg. Co.*, 515 Fed. Appx. 419, 424 (6th Cir. Mich. 2013) (internal quotation marks omitted). 12 U.S.C. § 2605(e), entitled "Duty of loan servicer to respond to borrower inquiries," imposes certain duties on entities "servicing" federally related mortgages. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Pursuant to 12 U.S.C. § 2605(e), a consumer may send a QWR to a loan servicer, requesting certain types of information related to the servicing of their loan. 12 U.S.C. § 2605(e)(1)(A); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. Cal. 2012) (noting that § 2605(e)'s requirement that a QWR "must request information relating to servicing . . . ensures that the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers"). A QWR is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that - (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Upon receipt of a QWR, the loan servicer must provide a written response

-9-

acknowledging receipt of the QWR within five days and must provide an answer sufficient to satisfy the requirements of 12 U.S.C. § 2605(e) within thirty days.  12 U.S.C. § 2605(e)(1)(A) and (e)(2).  RESPA provides three ways in which a servicer can validly respond to a QWR.   See 12 U.S.C. § 2605(e)(2).  First, a servicer can make corrections to the account. 12 U.S.C. § 2605(e)(2)(A). Second, a servicer can, after an investigation, explain or clarify why the account is already correct. 12 U.S.C. § 2605(e)(2)(B).  Or, third, a servicer can, following an investigation, provide the borrower with a written explanation or clarification that includes the information requested and an explanation of why the information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2).  The 30-day period may be extended for 15 days provided the servicer notifies the borrower of the extension and reason for the delay.  12 U.S.C. § 2605(e)(4).  12 U.S.C. § 2605(k)(1)(D) provides that a servicer shall not "fail to respond within 10 days to a request from a borrower to provide the identity, address and other relevant contact information about the owner or assignee of the loan."  12 U.S.C.  § 2605(e)(3) prohibits a servicer who has received a QWR from providing information to any consumer reporting agencies regarding any overdue payment during the 60-day period following receipt of a QWR.

      The evidence demonstrates that BANA contacted the Pikes and their attorneys promptly after receiving the first and second sets of QWRs dated September 19, 2013 and June 24, 2014.  BANA could not provide a substantive response to either, based on the fact that the signatures it had on file for Mr. Pike did not match.  Therefore, BANA offered the Pikes and their attorneys several options by which they could authorize Counsel to receive information regarding their Account.  Neither the Pikes nor their Counsel responded to either of these letters to provide the requested authorization.  Accordingly, the September 19, 2013 and June 24, 2014 QWRs from

-10-

the Pikes to BANA cannot serve as the basis for their claims.

On September 11, 2014, approximately one year after sending the first set of QWRs, Doucet & Associates sent the third set of QWRs, requesting the same information as was previously requested and, as stated above, included the photocopy of a State-issued identification card showing Mr. Pike's signature.

The evidence demonstrates that BANA investigated and provided a thorough and timely response to the Pikes' September 11, 2014 QWRs to the extent required under RESPA. BANA sent letters dated September 17, 2014, providing requested information regarding the owner (Wells Fargo) and servicer (BANA) of the Pikes' Loan. On September 24, 2014, BANA sent another letter specifically responding to the Pikes' demand pursuant to RESPA. The letter provided a substantive response to the inquiry made by the Pikes; included a copy of the mortgage; and, explained that the disputed fees were charged pursuant to the terms of the mortgage in connection with the Pikes' default on the Loan. (See September 24, 2014 Letter from BANA to the Pikes, Docket #82-1, Exhibit H.) BANA's correspondence included a separate letter dated September 24, 2014, confirming all the charges to the account. All letters from BANA to the Pikes invited additional communication regarding any questions or concerns that may remain.[4]

Even if the Pikes had sufficiently alleged a RESPA violation, there is no evidence that the Pikes suffered any actual damages as a result of what they assert was an inadequate response to their inquiry. A plaintiff must plead actual damages as well as a causal link between the

---

[4] The Pikes appear to have abandoned any arguments against BANA for unlawful reporting to credit agencies.

-11-

alleged RESPA violation and the plaintiff's injuries to recover for a violation of § 2605.  See *Mekani v. Homecomings Fin.*, LLC, 752 F. Supp. 2d 785, 795-96 (E.D. Mich. 2010) (noting that the plaintiffs must establish causation between the alleged RESPA violation and the damages claimed); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) (holding that RESPA limits an individual to actual damages caused by violation of statute); *Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 870 (S.D. Ohio 2011).  Conclusory allegations of actual damages are not sufficient.  *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010).

Mr. Pike acknowledged that the Loan had been in default since fall 2010 because he was unable to continue to make the payments and stated during deposition that his only damages are the cost of utilities and standard upkeep for the property while they continue to reside in the home.  (Pike Depo. at pp. 68-70.)  Further, there is no evidence of a pattern or practice which would support an award of statutory damages.  12 U.S.C. § 2605(f)(1)(B).

Based on the foregoing, BANA is entitled to summary judgment as to the Pikes' RESPA claim.

### 2. FDCPA.

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Congress designed the [FDCPA] to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. Or. 1988) (quoting S. Rep. No. 95-382, at 4 (1977),

reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). See also *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. Tenn. 2007) (FDCPA does not apply to a "party to whom the debt is due").  Creditors and mortgage servicers are excluded from the definition of "debt collector," provided the creditor or servicer neither acquired the debt when it was in default nor treated the debt as if it were in default at the time of acquisition.  *Bridge v. Ocwen Fed. Bank.*, 681 F.3d 355, 362 (6th Cir. Ohio 2012) (holding that "definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition.").  In *Brown v. Morris*, 243 F. App'x 31, 34 (5th Cir. Miss. 2007), the Court drew a distinction between mortgages assigned for debt-collection purposes, as opposed to those mortgages acquired through merger, for purposes of determining whether an entity is in fact a debt collector as defined by the FDCPA.

Countrywide Home Loans, Inc. was the original lender and servicer of the Loan. BACHLS began servicing the Loan on April 27, 2009 and later merged with BANA.  Because BANA acquired servicing rights on the Loan through merger, as opposed to an assignment for debt-collection purposes, it is not a debt collector for purposes of the FDCPA.  Further, there is no evidence that BANA used false, deceptive or misleading representations or means in connection with the collection of Pikes' Loan.  Accordingly, BANA is entitled to summary judgment on the Pikes' FDCPA claim.

**B.     Wells Fargo - TILA.**

The Pikes argue that Wells Fargo is liable under TILA because BANA, as loan servicer, failed to provide the name, address and telephone number of the owner of their Mortgage in response to the Pikes' QWRs.  Wells Fargo argues that Plaintiffs' TILA claim is time-barred with respect to the first QWR; that BANA could not respond to the first and second QWRs without valid authorization; and, that its response to the third QWR was sent within one week and provided the information requested.

The declared purpose of TILA, 15 U.S.C. § 1601, et seq., is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)).  TILA requires creditors/owners to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights" and provides for an action for damages against any creditor who fails to comply with its requirements. *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638).  The Sixth Circuit has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 714 (6th Cir. Ohio 2013); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. Ohio 1998).

15 U.S.C. § 1641(f)(2) provides that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."  TILA does not impose liability upon a servicer who is not an owner of the loan.  *Marais*, 736 F.3d at

718-19. However, a mortgage owner may be held vicariously liable for a servicer's failure to comply with 15 U.S.C. § 1641(f). *See Marais*, 736 F.3d at 716-17; *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309, 1315 (S.D. Fla. Aug 30, 2012).

As stated above, after receiving the first two QWRs from Doucet & Associates, BANA promptly requested authorization from the Pikes which would permit BANA to send Doucet & Associates information regarding the Pikes' Loan. Neither the Pikes nor their attorneys responded to either of these requests and it therefore follows that BANA did not send any information regarding the Pikes' Loan in response to D&A's letters. Thus, the Pikes' TILA claim fails to the extent that it is based on BANA's response to either of the first two QWRs.

With regard to the third QWR, sent to BANA on September 11, 2014, BANA did in fact send a letter to the Mr. Pike on September 17, 2014, less than a week later, including the requested information regarding the owner of the Loan. Accordingly, Wells Fargo is entitled to summary judgment as to the Pikes' TILA claim.

      **C.**      **Real Time Resolutions - RESPA.**

As stated above, the Pikes sent two letters to RTR dated September 19, 2013. One of the letters included Paragraphs titled "FDCPA Demand" and "TILA Demand" and requested certain information regarding the Pike's HELOC. The other letter sent by the Pikes to RTR did not reference any particular statute and stated in part, "In accordance with the Note and Mortgage, please provide a current reinstatement quote for the above-reference account(s). Also, please provide a current payoff as soon as possible and mail to the address listed above." The Pikes only claim against RTR is for a violation of RESPA, asserting that the RTR's response to their inquiries was insufficient and that RTR unlawfully continued to communicate with consumer reporting agencies when prohibited under RESPA.

The Parties disagree as to whether RTR acted as a loan servicer or debt collector as contemplated under RESPA; whether the responses provided by RTR were sufficient; and, whether RTR was required to refrain from contact consumer reporting agencies after receiving the Pikes' requests for information.  However, as set forth above, a plaintiff must plead actual damages as well as a causal link between an alleged RESPA violation and the plaintiff's injuries to recover for a violation of § 2605.  See *Mekani v. Homecomings Fin.*, LLC, 752 F. Supp. 2d 785, 795-96 (E.D. Mich. 2010) (noting that the plaintiffs must establish causation between the alleged RESPA violation and the damages claimed); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) (holding that RESPA limits an individual to actual damages caused by violation of statute); *Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 870 (S.D. Ohio 2011).  Conclusory allegations of actual damages are not sufficient.  *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010).

There is no evidence that the Pikes have suffered any actual damages as the result of RTR's alleged RESPA violations.   The Pikes' HELOC was in default 8 months before it was assigned to RTR and almost 3 years before the Pikes sent their QWRs to RTR.  Mr. Pike testified he believed his only damages to be the costs associated with maintaining the property while the Pikes continue to live there.  Further, there is no evidence of a pattern or practice which is necessary to justify an award of statutory damages.  12 U.S.C. § 2605(f)(1)(B).

For the foregoing reasons, RTR is entitled to summary judgment as to the Pikes' RESPA claim.

**IV.     Conclusion.**

The Motions for Summary Judgment filed by Defendants, Wells Fargo and BANA (Docket #82) and Real Time Resolutions (Docket #84), are hereby GRANTED.

The Motion for Summary Judgment filed by Plaintiffs, John and Teresa Pike, (Docket #88) is hereby DENIED.

The Motion to Strike Portions of the Affidavit of John Pike filed by Defendant, Real Time Resolutions (Docket #93) and the Motion to Strike the Affidavit of Bridget Wasson (Docket #96) are hereby DENIED AS MOOT.

This case is hereby TERMINATED.

IT IS SO ORDERED.

                                                        s/Donald C. Nugent
                                                       DONALD C. NUGENT
                                                       United States District Judge

DATED: February 12, 2016